UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                         :

ERIK BONETA                            :

                          Plaintiff,    :

                                            :

              -against-                   :

                                          :

ROLEX WATCH USA, INC. et al.,           :

                      Defendants.    :

                                          :
------------------------------------------------------------X

16 Civ. 2369 (LGS)

**OPINION AND ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __2/3/2017__

LORNA G. SCHOFIELD, District Judge:

       This case arises from Plaintiff Erik Boneta's allegations that Defendants Rolex Watch USA, Inc. ("Rolex USA"); Rolex Industries, Inc. ("Rolex Industries"); Montres Rolex, S.A. ("Montres Rolex") and Rolex Holdings, S.A. ("Rolex Holdings") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Sherman Antitrust Act and the Clayton Antitrust Act by deliberately and unlawfully permitting United States Custom and Border Protection ("CBP") officials to detain genuine Rolex watches imported into the United States from overseas. Defendants Rolex USA and Rolex Industries (collectively, "Defendants") move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted.

I.    **BACKGROUND**

       For purposes of this motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

       Pursuant to the Tariff Act of 1930 and accompanying regulations, CBP offers gray market protection to certain American-owned trademarks and trade names. When a trademark is entitled to gray market protection, CBP will prohibit the importation of a foreign-made item

bearing a genuine trademark that is identical to or substantially indistinguishable from the American-owned trademark.  An American-owned trademark is entitled to gray market protection where (1) the American and foreign trademarks are not owned by the same person, (2) the trademarks are not subject to common ownership or control and (3) the owner of the American trademark records it with the federal government.  *See* 19 U.S.C. § 1526(a); 19 C.F.R. § 133.23.

At some point prior to May 20, 2009, Defendant Rolex USA recorded its trademark with CBP, indicating that it was entitled to gray market protection.  As a result of this recordation, Rolex USA effectively received the exclusive right to import Rolex watches into the United States.  CBP published notice of that gray market protection on an agency website, http://iprs.cbp.gov, from 2009 to 2015.  Among other things, the agency website displayed a screen with information stating "Gray Market Restricted YES" as to Rolex products.  However, by 2006, Rolex USA had merged with all other Rolex entities, such that Rolex USA and the three other Defendants were under common ownership and Defendants knew that the U.S. trademark was no longer entitled to gray market protection.

Rolex USA never informed CBP about the merger.  Instead, Rolex USA deliberately allowed CBP to enforce its gray market protection in order to decrease its competition in the United States.  Defendants did so by requiring importers to obtain authorization to import Rolex watches, and communicating these authorizations "through email and postal services."  Relying on its gray market protection, Rolex USA consistently prohibited Plaintiff and numerous other watch importers from bringing shipments of Rolex watches into the United States.

On May 20, 2009, CBP officials detained a shipment of 90 Rolex watches that Plaintiff sought to import from Hong Kong.  The same day, CBP officials contacted Rolex USA "via wire

and/or mail" and "counsel for Rolex" confirmed that the watches were genuine, but advised that the shipments were not accompanied by authorization from Rolex USA, the trademark holder. Consequently, the watches were seized.

On or about May 22, 2009 a Special Agent with Immigration and Customs Enforcement, Brian Ferrante, "contacted counsel for" Rolex USA who confirmed that Plaintiff was not authorized to import Rolex watches, without disclosing that authorization was unnecessary.  As a result, a search warrant was sought for the purpose of finding and seizing more Rolex watches.

CBP eventually seized $1.9 million worth of Rolex watches legally purchased by Plaintiff.  Although Plaintiff believed that Rolex USA was not entitled to gray market protection in 2009, he settled the case against him by the United States Attorney's Office after being told by CBP, his attorney and the United States Attorney's Office that Rolex USA was entitled to gray market protection.

In 2015, Rolex USA let its gray market protection lapse when it failed to apply to CBP for an extension.  Rolex USA's decision not to seek further gray market protection confirmed Plaintiff's suspicions that Rolex USA had not been entitled to gray market protection since the merger in or around 2006, despite Rolex USA's representations to CBP.

Rolex USA is or was a corporate subsidiary of Defendants Rolex Industries and Montres Rolex.  Defendant Rolex Holdings may be the owner of one or more of the other Defendants. The Complaint contains no specific allegations regarding any Defendant except Rolex USA. Rolex Montres and Rolex Holdings are Swiss corporations and have not been served, nor have they appeared in this action.

## II.   <u>LEGAL STANDARD</u>

On a motion to dismiss for failure to state a claim, "the only facts to be considered are

3

those alleged in the complaint, and the court must accept them, drawing all reasonable inferences in the plaintiff's favor, in deciding whether the complaint alleges sufficient facts to survive." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016); *accord Littlejohn*, 795 F.3d at 306. To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Where a plaintiff alleges fraud or mistake, Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard. "In the RICO context, Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (internal quotation marks and citation omitted). "In addition, the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Id.* (internal quotation marks and citation omitted).

## III.   DISCUSSION

### A.  Alleged RICO Violations

The Amended Complaint (hereafter the "Complaint") alleges that Defendants committed substantive RICO violations under 18 U.S.C. § 1962(b) and 18 U.S.C. § 1962(c) through their participation in a pattern of mail and wire fraud. The Complaint also alleges that Defendants conspired to violate RICO under 18 U.S.C. § 1962(d). The RICO claims are dismissed because

4

the Complaint fails to state a claim on which relief can be granted.[1]

### 1.  Substantive RICO Claims

To establish a violation of 18 U.S.C. § 1962(b) and (c), the Complaint must allege, among other things, that Defendants engaged in a "pattern of racketeering activity." *See id.* "Racketeering activity" can comprise a variety of offenses including, as relevant here, mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). A "pattern" of racketeering activity requires at least two predicate acts of racketeering activity that are related and continuous. *See* 18 U.S.C. § 1961(5); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). "The requirements of section 1962(c) must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (to establish a substantive RICO violation, "a plaintiff must establish that a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise . . . .").

To plead mail and wire fraud as a racketeering activity, the Complaint must allege"(1) the existence of a scheme to defraud, (2) [Defendants'] knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).

---

[1] Defendants' argument that the RICO claims are time barred is unavailing at this early stage of the litigation. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Thea v. Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015); *accord Harris v. City of New York*, 186 F.3d 243, 250 (2d Cir. 1999) (at the motion to dismiss stage, a claim may be dismissed as time barred "only if [the] complaint clearly shows the claim is out of time"). In a civil RICO case, the statute of limitations begins to run when a plaintiff either discovers or should have discovered his injury. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361 (2d Cir. 2013). Nothing in the Complaint indicates that Plaintiff should have discovered his injury earlier than 2015. As a result, Defendants' timeliness argument is premature.

In addition, due to the heightened pleading standards for fraud, the Complaint also must "specify the time, place, speaker, and content of the alleged misrepresentations" that were conveyed through the mail or wires, "explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (alteration in original); *accord Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119–20 (2d Cir. 2013).

Although the Complaint alleges generally that all Defendants committed two or more RICO predicate acts, it alleges only two instances of mail or wire fraud on the part of Defendant Rolex USA that "were actually part of the overall conspiracy and pattern of racketeering activity." Specifically, the Complaint describes two communications between CBP officials and counsel for Rolex USA that took place on May 20 and May 23, 2009, respectively. These allegations are insufficient to plead a pattern racketeering activity. First, the Complaint does not specify the speaker, place or manner of either communication as required by Rule 9(b), only that an unnamed in-house or outside counsel for Rolex USA participated, and that the communication was by mail or wire. Second, the Complaint does not specify any other predicate acts by Defendant Rolex Industries or either of the other Defendants. *See, e.g., Lundy*, 711 F.3d at 119 (dismissal appropriate where plaintiff did not plead particular details regarding alleged fraudulent mailings or allege what any particular defendant did to advance the RICO scheme).

Plaintiff argues that another predicate act was Defendants' use of a webpage on the internet that fraudulently stated "YES" to the question of whether Rolex was subject to gray market protection. This argument fails because the use of the "wires" -- to the extent that a webpage can give rise to a wire fraud claim -- was by the Government and not Defendants. The

6

webpage on which the gray market protection was listed, http://iprs.cbp.gov, was created and maintained by the Government, not Defendants, to reflect filings with CBP.

The Complaint does not plead a pattern of racketeering activity, and thus does not plead a substantive RICO claim on which relief can be granted.  Accordingly, Counts One and Two are dismissed.

### 2. RICO Conspiracy Claim

To establish a RICO conspiracy under 18 U.S.C. § 1962(d), the Complaint must allege "a conspiracy to commit a substantive RICO violation."  *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008).  "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."  *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).  The Complaint contains no specific allegations whatsoever about Defendants Rolex Industries, Montres Rolex or Rolex Holdings.  A corporation cannot conspire with itself or with its own employees or agents.  *See Turkmen v. Hasty*, 789 F.3d 218, 263 (2d Cir. 2015) ("[D]efendants—officers and directors of a single corporation, and the corporation itself—could not legally conspire with one another ... because the defendants formed a 'single business entity with a managerial policy implemented by the one governing board.' Thus, the defendants could not satisfy the statutory requirement of a conspiracy between two or more persons.") (quoting *Girard v. 94th Street & Fifth Avenue Corp.*, 530 F.2d 66, 70–72 (2d Cir. 1976)), *cert. granted*, 2016 WL 2653797 (U.S. Oct. 11, 2016).  As the Complaint makes no plausible allegation of any agreement among Defendants or with anyone else, the Complaint fails to plead a RICO conspiracy, and Count Three is dismissed.

### B. Alleged Antitrust Violations

The Complaint alleges that Defendants participated in a conspiracy to restrain and

monopolize trade in Rolex watches in violation of Sections 1 and 2 of the Sherman Antitrust Act and Section 13 of the Clayton Antitrust Act.  For the reasons discussed below, the antitrust claims are dismissed under Rule 12(b)(6) for failure to state a claim.[2]

The Complaint alleges that Defendants -- all of which are affiliated Rolex companies -- engaged in an unlawful combination and conspiracy to restrain trade and commerce in Rolex watches in the United States.  These allegations fail to state a claim for at least three reasons.

First, as discussed above, there are no plausible allegations that any Defendant entered into an agreement, either with each other or a third party.  "At the pleading stage, a complaint claiming conspiracy, to be plausible, must plead enough factual matter (taken as true) to suggest that an agreement was made. . . ."  *Gelboim v Bank of Am. Corp.*, 823 F3d 759, 781 (2d Cir. 2016), *cert denied*, 2017 WL 160462 (U.S. Jan. 17, 2017) (No. 16-545) (internal quotation marks and citations omitted).

Second, even if there were allegations of a conspiracy among Defendants, where companies are under common ownership and control, they cannot conspire with each other for purposes of Sherman Act liability.  *See Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F. Supp. 674, 677 (S.D.N.Y. 1987) (citing *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 776 (1984)), (dismissing Sherman Act claim where plaintiff alleged that Rolex USA and Montres Rolex company were engaged in antitrust conspiracy); *see also American Needle, Inc., v. National Football League*, 560 U.S. 183, 195 (2010) ("The relevant inquiry . . . is whether there is a contract, combination . . . or conspiracy amongst separate economic actors pursuing separate economic interests, such that the agreement deprives the marketplace of independent centers of decisionmaking . . . .") (internal quotation marks and citation omitted)).  Here, the Complaint

---

[2] Consequently, the Court does not address Defendants' arguments regarding the timeliness of the claims or the applicability of the *Noerr-Pennington* doctrine.

alleges that Defendants were under common ownership, and does not allege that the four Rolex Defendants were separate or independent in any respect. Indeed, Plaintiff's theory of Defendants' joint liability seems to be premised on their intra-corporate relationship.

Third, the claim regarding Defendants' alleged monopolization of trade in Rolex watches in the United States fails because it does not define a relevant market for which a claim is actionable. "A valid claim for monopolization or attempted monopolization must define the relevant product market" in which trade was monopolized. *Shaw*, 673 F. Supp. at 678 (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 570–71 (1966)). The "market" for Rolex watches cannot support a claim under Section 2 of the Sherman Act. One brand does not constitute a relevant product market when the brand competes with potential substitutes. *See, e.g.*, *Hack v. President and Fellows of Yale College*, 237 F.3d 81, 86–87 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (Yale University competes with other schools and therefore is not its own product market, even if a Yale education is unique in some ways); *Shaw*, 673 F. Supp. at 678 (rejecting claim that Rolex watches constitute a viable relevant product market); *see also Todd v. Exxon Corp.*, 275 F.3d 191, 200 (2d Cir. 2001) (Sotomayor, J.) (dismissal for failure to plead relevant market is appropriate where a party attempts to "limit a product market to a single brand, franchise, institution, or comparable entity that competes with potential substitutes"). Here, although Plaintiff argues that Rolex watches are unique, they compete with other luxury watch brands, and consequently cannot be considered their own relevant market for purposes of a Section 2 violation.

As the Complaint does not plead that Defendants engaged in an unlawful combination and conspiracy, Count Four is dismissed.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED,

and Plaintiff's motion for oral argument is DENIED as moot.

Plaintiff's request for leave to amend under Rule 15(a)(1), Fed. R. Civ. P. is denied.  Any motion for leave to file a Second Amended Complaint shall be filed no later than February 17, 2017, and shall append a copy of the proposed amended pleading and shall be governed by the Court's individual rules pertaining to motions, except that no pre-motion letter or conference is necessary. The Clerk of Court is respectfully directed to close the motions at Docket No. 20 and Docket No. 26.


Dated:  February 3, 2017
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE