USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/21/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                :
ERIK BONETA,              :
              Plaintiff,  :
                :    16 Civ. 2369 (LGS)
     -against-        :
                :    **OPINION AND ORDER**
ROLEX WATCH U.S.A. INC., et al.,  :
             Defendants. :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Erik Boneta brings this action against Defendant Rolex Watch U.S.A., Inc. ("Rolex USA"), alleging that Rolex USA violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Sherman Antitrust Act and the Clayton Antitrust Act by deliberately and unlawfully permitting United States Custom and Border Protection ("CBP") officials to detain genuine Rolex watches imported into the United States from overseas. Plaintiff's First Amended Complaint was dismissed in its entirety for failure to state a claim. *See Boneta v. Rolex Watch USA, Inc.*, --- F. Supp. 3d ----, No. 16 Civ. 2369, 2017 WL 481450, at *1 (S.D.N.Y. Feb. 3, 2017). Plaintiff moves for leave to file a Second Amended Complaint (the "SAC") pursuant to Federal Rule of Civil Procedure 15(a)(2). For the following reasons, Plaintiff's motion is denied.

## I. BACKGROUND

      Familiarity with the procedural history and the allegations contained in the First Amended Complaint is assumed. *See Boneta*, 2017 WL 481450, at *1–2. The following is based on the SAC, and all factual allegations are assumed to be true for purposes of this motion. *See Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

Pursuant to the Tariff Act of 1930 and accompanying regulations, CBP offers gray market protection to certain American-owned trademarks and trade names. When a trademark is entitled to gray market protection, CBP will prohibit the importation of a foreign-made item bearing a genuine trademark that is identical to or substantially indistinguishable from the American-owned trademark. An American-owned trademark is entitled to gray market protection where (1) the American and foreign trademarks are not owned by the same person, (2) the trademarks are not subject to common ownership or control and (3) the owner of the American trademark records it with the federal government. *See* 19 U.S.C. § 1526(a); 19 C.F.R. § 133.23.

By letter dated February 8, 2005, Defendant Rolex USA renewed the recordation of its trademark with CBP, indicating that it was entitled to gray market protection. A CBP official confirmed renewal of Rolex USA's trademark in a letter dated June 30, 2005. The letter noted that "it is the recordant's responsibility to promptly advise [CBP] of any material changes made to recordations, including . . . changes in ownership or control." The same CBP official sent a letter dated January 11, 2006, confirming that the contact information for Rolex USA had been changed to John Flaherty and Angelo Mazza of Gibney, Anthony & Flaherty, LLP ("Gibney"), who were legal counsel for Rolex USA with regard to any CBP matters from 2004 through at least 2015.

As a result of this recordation, Rolex USA effectively received the exclusive right to import Rolex watches into the United States. CBP published notice of that gray market protection on an agency website, http://iprs.cbp.gov, from no later than 2009 until 2015. Among other things, the agency website displayed a screen with information stating "Gray Market Restricted YES" as to Rolex products. However, by 2006, Rolex USA had merged with other

Rolex entities, such that Rolex USA was under common ownership with Rolex Holdings, S.A., a foreign entity. At that point, Rolex USA knew that the U.S. trademark was no longer entitled to gray market protection.

Rolex USA never informed CBP about the merger. Instead, Rolex USA deliberately allowed CBP to enforce its gray market protection in order to decrease its competition in the United States. Rolex USA did so by requiring importers to obtain its authorization to import Rolex watches, and communicating these authorizations "through email and postal services." Relying on its gray market protection, Rolex USA consistently prohibited Plaintiff and numerous other watch importers from bringing shipments of Rolex watches into the United States.

On May 20, 2009, CBP officials detained two shipments containing a total of 90 Rolex watches that Plaintiff sought to import from Hong Kong. The customs broker of record for the detained shipments was Karen Ferry. The same day, CBP officials contacted Rolex USA "via wire and/or mail." Counsel from Gibney confirmed that the watches were genuine, but advised that the shipments were not accompanied by authorization from Rolex USA, the trademark holder. Consequently, CBP seized the watches and sent Plaintiff written notice of its actions. Gibney also sent Plaintiff a letter advising him of the seizure and seeking additional information.

On May 21, 2009, Brian Ferrante, a Special Agent with Immigration and Customs Enforcement, contacted either Flaherty or Mazza at Gibney, who confirmed that Plaintiff was not authorized to import Rolex watches and did not disclose that authorization was unnecessary. Also on May 21, Ferrante contacted Ferry, who provided "customs declarations, invoices and other documentation" showing that Plaintiff had imported at least six other shipments of watches since April 2009. As a result of these communications, a search warrant was sought for the purpose of finding and seizing more Rolex watches from Plaintiff.

In 2015, Rolex USA changed its recordation with CBP to indicate that it is not entitled to gray market protection. Rolex USA also notified FedEx at some point during 2015 that it no longer wished to abide by the import restriction. Rolex USA's decision not to seek further gray market protection confirmed Plaintiff's suspicions that Rolex USA had not been entitled to gray market protection since the merger in or around 2006, despite Rolex USA's representations to CBP.

The SAC alleges that Rolex USA is a subsidiary of Rolex Industries, Inc., which in turn is a subsidiary of Rolex Holdings, S.A. Montres Rolex, S.A. is the sole worldwide distributor of Rolex watches. Rolex Holdings, S.A. and Montres Rolex, S.A. are Swiss corporations.

## II. STANDARD

"Leave to amend should be 'freely give[n] . . . when justice so requires,' Fed. R. Civ. P. 15(a)(2), but should generally be denied in instances of futility . . . ." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 28 (2d Cir. 2016) (some internal quotation marks omitted). "A proposed amendment to a complaint is futile when it could not withstand a motion to dismiss." *F5 Capital v. Pappas*, 856 F.3d 61, 89 (2d Cir. 2017). In reviewing such a motion, a court accepts as true all factual allegations and draws all reasonable inferences in the plaintiff's favor. *See Trs. of Upstate N.Y. Eng'rs Pension Fund*, 843 F.3d at 566. To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations of fraud or mistake must meet the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b).

## III. DISCUSSION

Plaintiff's motion for leave to file the SAC is denied as futile because none of the claims asserted in the SAC could withstand a motion to dismiss.

### A. RICO

The SAC fails to state a substantive RICO claim because it fails to allege a pattern of racketeering activity. In order to plead a substantive RICO claim under 18 U.S.C. § 1962(c), a plaintiff must allege, among other things, that Defendants engaged in a pattern of racketeering activity. *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 439 (2d Cir. 2008) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)), *rev'd on other grounds sub nom. Hemi Group LLC v. City of New York*, 559 U.S. 1 (2010). "Racketeering activity" can comprise a variety of offenses including, as relevant here, mail fraud under 18 U.S.C. § 1341 and wire fraud under 18 U.S.C. § 1343. *See* 18 U.S.C. § 1961(1). A "pattern" of racketeering activity requires at least two predicate acts of racketeering activity that are related and continuous. *See* 18 U.S.C. § 1961(5); *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238 (1989). "The requirements of section 1962(c) must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).

The SAC alleges eight acts of mail or wire fraud. Four of those alleged acts are based on communications sent by CBP officials: the June 30, 2005, letter confirming renewal of Rolex USA's trademark; the January 11, 2006, letter confirming the change of contact information for Rolex USA; the May 21, 2009, communications between Ferry and Ferrante; and CBP's written notification to Plaintiff about the shipments of watches detained in May 2009. The Complaint alleges only that these mailings or wiring were "in furtherance of the scheme to defraud." "[T]o state a cause of action against any particular defendant, a complaint under § 1962(c) must

charge each named defendant with engaging in specific racketeering acts, constituting a pattern within the meaning of the statute, committed by that defendant in the course of conducting the affairs of the enterprise. Alleging, as this complaint does, . . . that somebody used the mails or wires in furtherance of at least some of [the alleged] schemes, does not adequately charge particular defendants with violating the [RICO] statute." *Zito v. Leasecomm Corp.*, No. 02 Civ. 8074, 2003 WL 22251352, at *10 (S.D.N.Y. Sept. 30, 2003) (Lynch, J.). Because the Complaint does not allege how Rolex USA participated in or could be held liable for these alleged acts of mail or wire fraud by CBP officials, these acts cannot satisfy the predicate act requirement as to Rolex USA. *See DeFalco*, 244 F.3d at 306.

Two other alleged acts of mail or wire fraud fail to meet Rule 9(b)'s heightened pleading standard. Mail or wire fraud occurs when a person "having devised or intending to devise any scheme or artifice to defraud," uses the mail or wires "for the purpose of executing such scheme or artifice or attempting so to do." 18 U.S.C. §§ 1341, 1343. Because these predicate acts sound in fraud, Rule 9(b) requires that the allegations "state the contents of the communications, who was involved, and where and when they took place, and should explain why they were fraudulent." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 185 (2d Cir. 2008); *accord Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008) (summary order). Here, the SAC fails to explain what was fraudulent about either the February 8, 2005, letter renewing recordation of Rolex USA's trademark, which was sent before Rolex USA allegedly lost its entitlement to gray market protection in 2006, or the May 2009 letter from Gibney, which accurately reported that Plaintiff's shipment had been seized and requested information from Plaintiff. Plaintiff's conclusory allegation that both of these letters were "in furtherance of the scheme to defraud" do not satisfy the particularity requirement of Rule 9(b). *See Knoll*, 275 F.

6

App'x at 51 ("The amended complaint's general descriptions of fraud suffered by the plaintiff do not save it, for the complaint offers no indication how they are specifically related to the allegations of wire and mail fraud.").

That leaves only two alleged predicate acts -- Gibney's May 20, 2009, communication to CBP refusing to authorize importation of Plaintiff's watch shipment, and Gibney's May 21, 2009, communication to Ferrante stating that Plaintiff was not authorized to import Rolex watches. These two predicate acts are insufficient to plead a "pattern" of racketeering activity because they lack continuity.

In the context of RICO, "continuity" is "both a closed- and open-ended concept." *H.J. Inc.*, 492 U.S. at 241. "[C]losed-ended continuity is primarily a temporal concept, and it requires that the predicate crimes extend over a substantial period of time. Predicate acts separated by only a few months will not do; this Circuit generally requires that the crimes extend over at least two years." *Reich v. Lopez*, --- F.3d ----, No. 16-510-CV, 2017 WL 2293546, at *2 (2d Cir. May 26, 2017) (internal quotation marks and citations omitted). Open-ended continuity, on the other hand, applies to "criminal activity that by its nature projects into the future with a threat of repetition." *Id.* at *3. Neither type of continuity is adequately alleged in the SAC. Because the only two viable predicate acts occurred over a span of two days, they do not possess closed-ended continuity. And because the SAC alleges that the fraudulent scheme ended in 2015 when Rolex USA stopped claiming entitlement to gray market protection, the alleged wrongdoing does not project into the future as required for open-ended continuity.

The SAC could not withstand a motion to dismiss the substantive RICO claim because it fails adequately to allege a pattern of racketeering activity. Plaintiff's motion for leave to file the SAC is therefore denied as to this claim.

7

### B. RICO Conspiracy

The SAC fails to state a RICO conspiracy claim under 18 U.S.C. § 1962(d). "To establish the existence of a RICO conspiracy, a plaintiff must prove the existence of an agreement to violate RICO's substantive provisions." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) (internal quotation marks and citations omitted). Where, as here, a plaintiff does not allege that the defendant "committed predicate acts displaying the continuity necessary to support a substantive RICO violation" or "agreed to perform additional predicate acts that, if committed, would have displayed continuity sufficient to establish a pattern of racketeering activity," the plaintiff fails to state a RICO conspiracy claim. *Id.* at 245; *see also Reich*, 2017 WL 2293546, at *5 (affirming dismissal of RICO conspiracy claim because plaintiff failed adequately to allege a "pattern of racketeering activity" that would support a substantive RICO claim). Accordingly, Plaintiff's motion for leave to file the SAC is denied as to this claim.

### C. Antitrust

Finally, the SAC fails to state a claim under Sections 1 and 2 of the Sherman Antitrust Act and Section 13 of the Clayton Antitrust Act for a conspiracy to restrain and monopolize trade in Rolex watches. Plaintiff's antitrust claims are virtually unchanged in the SAC and are dismissed for the same three reasons they were dismissed previously. *See Boneta*, 2017 WL 481450, at *4–5.

First, there are no plausible allegations that any Defendant entered into an agreement, either with each other or a third party. *See Gelboim v Bank of Am. Corp.*, 823 F.3d 759, 781 (2d Cir. 2016) ("At the pleading stage, a complaint claiming conspiracy, to be plausible, must plead enough factual matter (taken as true) to suggest that an agreement was made. . . ."). Second, the

SAC is premised on the allegation that Rolex USA fell under common ownership with Rolex Holdings, S.A., and such related entities cannot conspire with each other for purposes of Sherman Act liability. *See Shaw v. Rolex Watch, U.S.A., Inc.*, 673 F. Supp. 674, 677 (S.D.N.Y. 1987) (dismissing Sherman Act claim where plaintiff alleged that Rolex USA and Montres Rolex company were engaged in antitrust conspiracy); *see also American Needle, Inc., v. National Football League*, 560 U.S. 183, 195 (2010) ("The relevant inquiry . . . is whether there is a contract, combination . . . or conspiracy amongst separate economic actors pursuing separate economic interests . . . ."). Third, the SAC alleges that Rolex USA restrained the market for Rolex watches, but one brand does not constitute a relevant product market when the brand competes with potential substitutes. *See, e.g.*, *Hack v. President and Fellows of Yale College*, 237 F.3d 81, 86–87 (2d Cir. 2000), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (Yale University competes with other schools and therefore is not its own product market, even if a Yale education is unique in some ways); *Shaw*, 673 F. Supp. at 678 (rejecting claim that Rolex watches constitute a viable relevant product market).

Because the SAC could not withstand a motion to dismiss Plaintiff's antitrust claims, Plaintiff's motion for leave to amend is also denied as to this claim.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Erik Boneta's motion for leave to file the SAC is DENIED.

The Clerk of Court is respectfully directed to close the motion at Docket No. 30 and close the case.

Dated: June 21, 2017
      New York, New York

_____
LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE